GENERAL ASBESTOS & SUPPLY COMPANY *v.* AETNA CASUALTY & SURETY COMPANY OF HARTFORD.

[No. 15,037. Filed December 20, 1935.]

*Eugene J. Payton* and *Aaron H. Huguenard,* for appellant.

*Noel, Hickam, Boyd & Armstrong* and *Frank Martindale,* for appellee.

WOOD, J.—This is an appeal by the appellant from a judgment rendered against it by the Marshall Circuit Court on a trial by agreed case submitted to said court in accordance with secs. 2-2201 to 2-2203, inclusive, Burns 1933, Baldwin's Ind. St., secs. 362 to 364, inclusive.

The facts contained in the agreed case necessary to be incorporated in this opinion for a proper consideration of the questions presented by this appeal may be summarized as follows. On April 5, 1929, the School City of South Bend entered into a written contract and bond with Gerber and Haley Company, a partnership, as general contractors, for the erection of an addition to the "James Whitcomb Riley School" in said city. The appellee joined in the execution of this contract and bond, as surety of its performance on the part of the general contractors. Among the terms and conditions contained in the contract and bond are the following:

"Provided that nothing herein contained nor any variation from the amount of the instalments of the contract price or from the manner and time of their payment shall be construed as impairing the right of the Owner or of those to whose benefit the bond given herein shall inure, to hold the Contractor and Surety liable on this contract and bond, for any breach of the terms and conditions of the same, nor as imposing upon the Owner any obligations to laborers, materialmen or sub-contractors or other persons except as to moneys coming to the Contractor hereunder and retained for their benefit. And said Contractor and said Surety agree that said Contractor and its successors or assigns, whether by operation of law or otherwise, and all its subtractors hereunder shall pay all indebtedness which may accrue to any person, firm or corporation on

account of any labor or service performed or materials furnished or services rendered in the construction and erection of said building.

"FOR THE FAITHFUL PERFORMANCE of all and singular the terms, agreements, stipulations, conditions and covenants in this contract contained and to be observed and performed by the Contractor, the Contractor, as principal, and the Surety herein, in consideration of the premises, hereby jointly and severally bind themselves and their respective heirs, executors, administrators, successors, personal representatives and assigns unto the State of Indiana and said Owner in the principal sum of Ninety-four Thousand Nine Hundred Fifty Dollars ($94,950.00) lawful moneys of the United States.

"It is understood and agreed that the Surety expressly waives whatever right it may have to be notified of any alterations, modifications and additions which may be directed by the Architect or Owner under the terms hereof, and also waives whatever right it may have to be notified of, or consent to, any extension of time for the performance of this contract which may be allowed by the Architect or Owner, and acknowledges itself to be bound for all such alterations, modifications, additions and extensions as though proper notice thereof had been given to it and it had consented thereto. And it is expressly agreed that no change, modification, omission or addition in and to the terms or conditions of this contract, said plans, specifications, drawings or profiles or any irregularity or defect in this contract or in the proceedings preliminary to the letting and awarding thereof, shall in any wise affect or operate to relieve, release or discharge said Surety; and that the provisions and conditions of the Act of the General Assembly of the State of Indiana entitled 'An Act concerning Public Building and Public Improvement Contracts and declaring an emergency,' approved March 4th, 1911, as amended, including the amending act set forth in Chapter 44 of the Acts of said General Assembly in the Acts of 1925, shall be, operate and become a part of the terms of this contract and bound for the work covered by this contract, and this contract is made subject thereto.

"It is further agreed and understood that this

bond shall directly inure to the benefit of all sub-contractors, laborers, materialmen and those performing service in relation to or in connection with the construction and erection of said building who may have furnished or supplied labor, material or service for and on account of the construction of said work or directly in connection therewith or in relation thereto; *provided that such sub-contractors, laborers, materialmen and those performing service in relation to or in connection with the construction and erection of said building, shall file their claims with said Owner within the time and in the manner required by law."* (Our italics.)

On April 17, 1929, appellant entered into a written contract with the general contractors, to furnish and install roofing and sheet metal work required in the erection of said addition, which contract was fully executed by appellant. On August 31, 1929, when the last labor was performed, and material furnished, there was a balance due and unpaid to the appellant on its contract of $1,255.35, and there had been long and unreasonable delay in the payment of this sum, and it was agreed that if the court found for appellant, it should enter judgment for the sum of $1,255.35, with interest at the rate of six per cent per annum from February 22, 1930, to the date of such judgment. On February 19, 1930, the appellant filed with the school city a verified statement in, duplicate of the amount due and owing to it for the material furnished and installed in said addition pursuant to its contract with the general contractors, and on February 22, 1930, the school city delivered one of these verified copies to the appellee. This agreed case was submitted April 10, 1933. On January 23, 1932, Gerber and Haley as individuals and as co-partners, were discharged in bankruptcy and released from liability on appellant's claim. Appellant claimed that the appellee was liable to it for the balance due on its contract with the general contractors, and the appellee denied liability solely on the ground that the appellant did

not within sixty days after the completion of its contract with the general contractors and within sixty days after the last item of material and labor had been furnished under said contract file with the school city a verified statement in duplicate of the amount owing to the appellant under its contract.

On the agreed statement of facts the court concluded the law to be with the appellee, and pursuant thereto entered judgment against the appellant. Exceptions were properly taken to each conclusion of law by the appellant. The errors properly assigned for reversal, requiring our consideration, are that the court erred in its first and second conclusions of law. *Hawks* v. *The Mayor* (1895), 144 Ind. 343, 43 N. E. 304.

On appeal from a judgment rendered on a trial by agreed case, no presumptions are indulged in favor of the judgment of the trial court, because this court has the same means as the trial court of reaching a correct conclusion of law upon the agreed facts of the case, and they will be considered as if this court were trying the case originally. *Jennings* v. *Humbree* (1919), 71 Ind. App. 370, 124 N. E. 876, and authorities there cited.

The facts presented by the record, and the argument of counsel in their respective briefs, require an examination and application of secs. 53-201 to 53-203, inclusive, Burns 1933, secs. 14084 to 14086, inclusive, Baldwin's Ind. St. 1934, as heretofore interpreted and construed by our courts, to the contract and bond in question, in order to determine the respective rights of the parties thereunder, for they agree that the contract and bond are within the class required and controlled by the above sections of the statute.

The appellant contends that under those sections of the statute as heretofore construed and applied by our courts, it was not necessary for it to file a verified claim

in duplicate of the amount owing to it from the general contractor with the school city, in order to assert successfully a claim against appellee on the bond, that those sections of the statute are not exclusive but cumulative, that whether it should file its verified claim was optional with appellant, and it is only when the sub-contractor, materialman, or laborer seeks to "impound" the funds of the contractor in the possession of the owner, in this case the school city, that it is necessary to file such verified claims. This contention is supported by the following cases, *Illinois Surety Co.* v. *State ex rel.* (1919), 69 Ind. App. 450, 122 N. E. 30; *Equitable Surety Co.* v. *Indiana, etc., Co.* (1919), 70 Ind. App. 75, 123 N. E. 22; *United States Fidelity, etc., Co.* v. *State ex rel.* (1919), 71 Ind. App. 648, 125 N. E. 420; *Million* v. *Metropolitan, etc., Co.* (1930), 95 Ind. App. 628, 172 N. E. 569 (Transfer denied by Supreme Court February 2, 1933) ; *Concrete Steel Co.* v. *Metropolitan, etc., Co.* (1930), 95 Ind. App. 649, 173 N. E. 651 (Transfer denied by Supreme Court February 2, 1933) ; *Natural, etc., Corp.* v. *Highways, etc., Corp.* (1930), 96 Ind. App. 120, 173 N. E. 330; *Eagle, etc., Co.* v. *McGee* (1931), 92 Ind. App. 537, 175 N. E. 663, some of which are cited by appellant in its brief.

But to meet this contention and the construction placed upon the sections of the statute by our courts, the appellee asserts that the controversy is not whether, by virtue of the above sections of the statute as thus construed, the appellant was required to file a verified claim in duplicate with the school city of the amount owing to it by the general contractors, in order to assert successfully a claim against appellee on its bond, but whether under the provisions of the bond itself, which we have heretofore italicized, the filing of such a verified statement was a condition precedent to recovery on the bond.

Sec. 53-201, Burns 1933, Sec. 14084, Baldwin's Ind. St. 1934, *supra,* except as otherwise provided, makes it the duty of a school corporation, where any public building is being erected, to withhold final payment to the contractor until he has paid the sub-contractors, etc., all bills due and owing to them, provided there is a sufficient sum owing to the contractor to pay them. If the sum is not sufficient, then it must be prorated in payment of such bills among the parties entitled thereto. This section also provides that such sub-contractors, etc., shall file their claims with the school corporation within sixty days after the last material is furnished or services rendered. It also provides that the school corporation may make full, final, and complete settlement upon the contract with the contractor after thirty days from the date of completion and acceptance of the work as completed, upon furnishing of satisfactory evidence, showing payment in full of all sub-contractors, etc., and provides further that the surety of the contractor or contractors shall not be released until one year after final settlement with the contractor.

By the terms of Sec. 53-202, Burns 1933, Sec. 14085, Baldwin's Ind. St. 1934, *supra,* all contracts awarded contractors for the construction of public buildings shall provide for the payment of all subcontractors, laborers, materialmen and those performing any service in relation to or in connection with such construction, by withholding by such school corporation funds sufficient from the contract price to pay such subcontractors, etc.:

". . . and a good and sufficient bond shall be executed by the contractor to the State of Indiana, and approved by and for the benefit of any such . . . school corporation . . . in an amount equal to the total contract price, and further conditioned for the payment by the contractor, his successors and assigns, whether by operation of law or otherwise, and by the subcontractors, their successors and assigns, whether by operation of law or otherwise,

of all indebtedness, which may accrue to any person, firm or corporation on account of any labor or service performed or materials furnished or service rendered as herein provided in the construction, erection, alteration or repair of any such building, work or improvement, . . . such bond by its terms also shall be conditioned as to directly inure to the benefit of subcontractors, laborers, materialmen, and those performing service as herein provided who may have furnished or supplied labor, material or service for and on account of the construction of any such public work or improvement or directly in connection therewith or relating thereto. Such bond shall be deposited with and held by such . . . school corporation . . . for the use and benefit of any person, firm or corporation interested therein and entitled to the benefits thereof, and said bond shall be further conditioned that no change, modification, omission or addition in and to the terms or conditions of said contract, plans, specifications, drawings or profile or any irregularity or defect in said contract or in the proceedings preliminary to the letting and awarding thereof shall in any wise affect or operate to release or discharge said surety, and that the provisions and conditions of this act shall be, operate and become a part of the terms of any such contract and bond for any such public work or improvement as contemplated herein and [that they] are subject thereto; Provided, That any person, firm or corporation to whom any money shall be due on account of having performed any labor or having furnished any material or service, as provided herein, in the construction, erection, alteration or repair of any such building, work or improvement within sixty [60] days after the completion of such labor and service or within sixty [60] days after last item of material shall have been furnished by them shall file with such board, . . . or if [of] any such political subdivision, . . . created by law entering into contract with the principal contractor for any such public work or improvement, as provided herein, duplicate verified statements of the amount due and owing, and it shall be the duty of such board, . . . or of any such political subdivision . . . to forthwith deliver to the surety or sureties on such bond one [1] of said duplicate statements; but the failure so to do on the

part of such board . . . or any of such political subdivisions . . . shall in no way effect [affect] or invalidate the rights of any such person, firm or corporation to whom money shall be due on account of having performed labor or service or having furnished material, nor shall the failure so to do operate as a defense for the surety."

These two sections, in their original form, were passed by the Legislature in 1911, see Chapter 173, Acts 1911, p. 437. They were amended by the Legislature in 1925, see Chapter 44, Acts 1925, p. 129. They were amended again in 1931, see Chapter 168, Acts 1931, p. 581, and in 1933, see Chapter 258, Acts 1933, p. 1142. We, however, are not concerned with the last two amendments, since the contract and bond antedate their enactment. The construction to be placed upon these two sections of the statute, and the purpose of their enactment, are clearly set forth in Sec. 53-203, Burns 1933, sec. 14086, Baldwin's Ind. St. 1934, *supra,* reading as follows: "This act shall not be construed as conflicting with any other laws for the protection of labor, subcontractors or materialmen, but is supplemental thereto." This section of the act has never been amended in any of its terms since its passage in 1911.

The appellee is a surety for profit, and not an accommodation surety, and is therefore not a favorite of the law. Its status is in the nature of an insurer rather than a surety. It follows that if the contract and bond under consideration are open to two constructions, that construction will be adopted which is most favorable to the persons intended to be protected by it. *Title, etc., Co.* v. *State ex rel.* (1915), 61 Ind. App. 268, 109 N. E. 237. The bond having been taken pursuant to the provisions of the statute above referred to, falls within the class designated as official bonds, so the terms of the statute requiring the bond enter into and become a part of it, whether written into

the bond or not, and constitute the contract upon which both the rights and liabilities of the surety are to be determined. When parties enter into a bond of this kind they are bound to know the conditions imposed by the law pertaining thereto. *United States Co.* v. *Poetker* (1913), 180 Ind. 255, 102 N. E. 372; *Holthouse* v. *State ex rel.* (1912), 49 Ind. App. 178, 97 N. E. 130; *Southern Surety Co.* v. *Kinney* (1920), 74 Ind. App. 205, 127 N. E. 575; *Million* v. *Metropolitan, etc., Co., supra.*

The language incorporated in the contract and bond is substantially the same as that contained in the statute, including the clause which we have italicized. That clause is not one of the conditions which the statute requires to be inserted in the bond, but only prescribes a method to be resorted to, in case the subcontractor desires to exercise his option to impound the funds of the general contractor remaining in possession of, in this case, the school city. If the contention of the appellee should prevail, then a surety on executing an official bond could insert binding conditions therein, though not required by the statute demanding the execution of the bond, restricting and limiting its liability thereunder, irrespective of the provisions of the statute, thereby defeating the very purpose and intent of the Legislature in requiring the giving of such bond in the first instance. This would in effect vest public officials, whose duty it is to require the bond, with power to contract away the rights of the public and the very persons for whose benefit the bond is demanded. This, the courts hold, such officials do not have the right to do, and when such restrictive conditions are inserted in an official bond they are treated as surplusage, and as of no binding effect.

Sec. 3-2512, Burns 1933, sec. 1142, Baldwin's Ind. St. 1934, provides:

"No official bond entered into by any officer, nor any bond, recognizance or written undertaking taken by any officer in the discharge of the duties of his office, shall be void for want of form or substance or recital or condition, nor the principal and surety be discharged; but the principal and surety shall be bound by such bond, recognizance or written undertaking to the full extent contemplated by the law requiring the same, and the sureties to the amount specified in the bond or recognizance."

In the case of *United States, etc., Co.* v. *Poetker, supra,* the appellee, as receiver of a bank, brought suit against appellant as surety upon the cashier's bond to recover for defalcations by that official. In that case, as in the instant case, the surety sought to escape liability because of the failure of the beneficiaries under the bond to comply with the conditions inserted therein, but not required under the statute demanding its execution. In disposing of that contention the court said: "The statute fixes upon surety companies the character of lawful sureties upon statutory bonds, but it gives them no authority to change the character or legal effect of the bonds which the statute exacts."

In commenting upon the purpose and intent of the section of the statute last above quoted, the court in the Poetker case cited the case of *Opp* v. *Ten Eyck* (1885), 99 Ind. 345, and quoted from the opinion in that case as follows:

"The force and effect of this section is to cure defects and supply omissions in the class of bonds named, whether the defects and omissions be of form or substance, and to hold the obligors, both principal and sureties, to the full extent of the law requiring the bond."

In *Western, etc., Co.* v. *Muskogee County* (1916), 60 Okla. 140, 159 Pac. 655, L. R. A. 1917B 977, the court had before it for consideration the liability of the appellant on a public depository bond, in which restrictive

conditions had been inserted, not required by the provisions of the statute under which the bond was given. In that case, as here, the surety denied liability because of the failure of the beneficiary under the bond to comply with the added conditions. In disposing of this contention the court said:

"We believe, however, that there is a distinction to be observed between bonds given to private concerns, where both parties have full liberty of contract, and bonds given pursuant to a statute, as in this case, for the public benefit. We believe that a bonding company, giving a bond under the provisions of a law and for a public purpose, is bound to know the law and to know the limitations fixed by the law upon the authority of the agents for the public, with whom it contracts. Here the statute fixes the conditions of the depository bond. This law, with all its terms, no more and no less, becomes a part of the bonding contract. The board has no authority to waive any part of the statute nor add anything to it. The bond in controversy, as executed, contains all the conditions required by the statute, with the addition of a condition requiring notice, which tends to modify the statute and to limit the liability. This additional condition, we think, may not be imposed.

"When the bond contains the exact language of the statute, and follows with other provisions which are not required by statute, it is generally held that such a bond is a statutory bond, and the other provisions will be treated as surplusage. Being then a statutory bond under the terms of the statute, the liabilities imposed by the statute become a part of the bond. In other words, the statute defines the duties of the public officer, to wit, the county depository, and a bond condition in the language of the statute will be held to protect the county against the nonperformance of these duties, and clauses attempting to limit and restrict the right will be ineffective and inoperative."

See also *Southern, etc., Co.* v. *Kinney, supra; Chambers* v. *Cline* (1906), 60 W. Va. 588, 55 S. E. 999; *Macready* v. *Schenck* (1889), 41 La. App. 456, 6 So. 517; *United*

220

*States, etc., Co.* v. *Union, etc., Co.* (1904), 142 Ala. 532, 38 So. 177, 9 C. J., sec. 56, p. 34.

Testing the force and effect of the clause inserted in the bond, on which the appellee depends to escape liability, by the rules heretofore adopted and adhered to by our Supreme and this court and the courts of last resort of other jurisdictions, leads to but one conclusion, namely, that such clause is of no force and effect and that the failure of appellant to comply with its terms did not relieve appellee from liability as surety.

The judgment is reversed, with instructions to the trial court to re-state its conclusions of law in favor of the appellant, and to render judgment thereon for appellant in the sum of $1,255.35, with interest at the rate of six per cent per annum from February 22, 1930, to date of entering such judgment and for costs.