In re the Matter of KEMPER INSUR-
ANCE COMPANIES and the Surety
Bond Issued for Bethlehem Steel Cor-
poration.

American Motorists Insurance Compa-
ny, a member of the Kemper Insur-
ance Companies, Appellant,

v.

Worker's Compensation Board
of Indiana, Appellee.

No. 93A02–0402–EX–186.

Court of Appeals of Indiana.

Dec. 21, 2004.

Rehearing Denied Feb. 14 2005.

Steven H. Rittmaster, Torre, Lentz, Ga-mell, Gary & Rittmaster, LLP, Jericho, NY, Jeffrey J. Mortier, Julia Blackwell Gelinas, Locke Reynolds LLP, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, David L. Steiner, Deputy Attorney General, G. Terrence Coriden, Chairman, Worker's Compensation Board of Indiana, Indianapolis, IN, Attorneys for Appellee.

Robert Fanning, Due Doyle Fanning & Metzger, LLP, Indianapolis, IN, Attorney for Amicus Curiae Indiana Self–Insurers Association, Inc.

Craig R. Van Schouwen, Blachly, Tabor, Bozik & Hartman, Valparaiso, IN, Attorney for Amicus Curiae April Moehl.

## OPINION

CRONE, Judge.

### Case Summary

Appellant American Motorists Insurance Company, a member of the Kemper Insur-ance Companies ("Kemper"), appeals the order of the Worker's Compensation Board ("the Board") that Kemper is liable under its $3,000,000 surety bond ("the Bond") for all the worker's compensation liabilities of Bethlehem Steel Corporation ("Bethlehem") arising from personal injury dates that occurred from August 1, 1979, to April 30, 2003. We affirm.

### Issue

We restate the issue Kemper presents as whether the Board erred in determining the extent of Kemper's liability under the Bond.

### Facts and Procedural History [1]

By way of introduction, Indiana Code Section 22–3–2–5(a) of the Worker's Compensation Act ("the Act") provides that every employer bound by the Act's compensation provisions "shall insure the payment of compensation to the employer's employees and their dependents ... or procure from the [Board] a certificate authorizing the employer to carry such risk without insurance." The statute further provides, "While such insurance or such certificate remains in force, the employer or those conducting the employer's business and the employer's worker's compensation insurance carrier shall be liable to any employee and the employee's dependents for personal injury or death by accident arising out of and in the course of employment only to the extent and in the manner" provided by law. Ind.Code § 22–3–2–5(a). Indiana Code Section 22–3–5–1(a) states that these employers must either obtain worker's compensation insurance through an outside entity or furnish to the Board proof of their financial ability to pay such compensation directly as provided by law. The Board "may require

---

1. We heard oral argument on September 20, 2004, in Indianapolis. We commend counsel for their appellate advocacy.

the deposit of an acceptable security, indemnity, or bond to secure the payment of compensation liabilities as they are incurred." Ind.Code § 22–3–5–1(b). The forms for such bonds are promulgated by the Board. Finally, Indiana Code Section 22–3–5–3(a) provides that whenever an employer has complied with these self-insurance requirements, the Board "shall issue to such employer a certificate which shall remain in force for a period fixed by the [B]oard[.]"

Beginning August 1, 1979, Bethlehem was self-insured for its worker's compensation liabilities in Indiana. On August 31, 2000, agents for Bethlehem and Kemper executed the Bond. Kemper never executed another bond on Bethlehem's behalf, but it did accept a second premium from Bethlehem in 2001. Bethlehem filed for Chapter 11 bankruptcy on October 15, 2001.

In a letter to self-insured employers dated May 28, 2002, Board Chairman G. Terrence Coriden enclosed a revised surety bond form and renewal application. The letter stated that the revised bond form "must be fully executed and submitted with [the employer's] renewal application." Appellant's App. at 86. On July 31, 2002, Bethlehem filed its self-insurance renewal application with the Board but did not submit a fully executed revised bond form.[2] In the renewal application, Bethlehem listed the Bond as its security and stated, "The current bond listed above remains in effect. The bonding company is currently reviewing the revised [surety bond form]." *Id.* at 116. On November 18, 2002, the Board issued Bethlehem a

certificate of self-insurance with an expiration date of August 31, 2003.

Bethlehem stopped paying its worker's compensation liabilities after April 30, 2003, when it apparently ceased operations. On June 11, 2003, having been "duly advised by representatives of [Kemper] that Kemper [was] willfully refusing to pay claims for and on behalf of [Bethlehem] ... as required by the Indiana Worker's Compensation Act and [the Bond], for claims arising after September 1, 2002[,]" the Board issued a rule to show cause against Kemper. *Id.* at 6. The Board held a hearing on the matter on November 26, 2003.[3]

On January 28, 2004, the full Board issued its final order, which reads in pertinent part as follows:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Full Worker's Compensation Board of Indiana, having sworn witnesses, admitted evidence at the hearing, heard arguments of counsel, and being duly advised in the premises therein, now finds:

1. On November 18, 2002, Bethlehem Steel Corporation (hereinafter, "Bethlehem") was issued a Certificate of Self–Insurance by the Worker's Compensation Board of Indiana for its 2002 policy year renewal.

2. On August 31, 2000, American Motorists Insurance Company issued surety bond number 3SM 961 084–00

---

**2.** *Cf.* Ind. Admin. Code tit. 631, r.1–1–29 ("Any employer ... desiring a certificate of financial ability to pay compensation direct without insurance, shall file with the [Board], an application for such certificate and shall furnish therein all the information required.").

**3.** By agreement with Kemper, Board Chairman Coriden acted as the Board's representative and hearing officer at the hearing, a transcription of which was submitted to the full Board for a decision.

(hereinafter, "the bond") on behalf of Bethlehem.

3. American Motorists Insurance Company is a member of Kemper Insurance Companies (hereinafter, "Kemper.")

4. The bond was issued on the Revised 2000 SI–2 Surety Bond form as promulgated by the Worker's Compensation Board.

5. As provided by condition number one of the bond, the surety's obligation under the bond extends to all past, present, existing and potential liability of the principal regardless of dates of injuries.

6. As per the testimony of Robert A. Fanning, Director of the Indiana Self–Insurers Association, this type of bond is known in the surety industry as a "last-on" bond form. A last-on bond form means that the current bond covers all past, present and future liabilities regardless of the issuance date of the current bond.

7. Kemper's obligation under the bond extends to all worker's compensation liabilities of Bethlehem with injury dates prior to September 1, 2000, which was the date of issuance of the bond.

8. Kemper does not dispute its liability under the bond for injuries which occurred on and between September 1, 2000 and August 31, 2001.

9. Kemper's obligation under the bond extends, additionally, to all worker's compensation liabilities of Bethlehem with injury dates on and between September 1, 2000 and August 31, 2001.

10. Per the testimony of Natalie Fierek, administrator [of] the Indiana Self–Insurance Program, no other surety company writing bonds on behalf of the self-insured employers in the State of Indiana have [sic] interpreted the language of the Revised 2000 SI–2 Surety Bond Form in the same manner as Kemper.

11. As set forth within the conditions of the bond, the "bond shall be continuous in form and shall remain in full force and effect unless terminated in the manner hereinafter provided."

12. Further, the language of [the] bond is as follows:

> "IT IS FURTHER AGREED AND STIPULATED that this Bond may be cancel[l]ed at any time by the surety upon giving 60 days notice to the principal herein and to the Board, in which event the liabilities of the surety shall, at the expiration of 60 days, cease and terminate, except as to such liabilities of the principal with a personal injury date o[r] disablement that occurred during the effective period of the bond and prior to the expiration of said 60 days."

The quoted provision requires the surety to provide 60 days notice of cancellation of the bond to the principal and the Board.

13. Kemper has not, as of the date of hearing, provided notice of cancellation of the Bethlehem bond.

14. The language of the bond further states, "This bond shall be continuous in form and shall remain in full force and effect unless terminated in the manner hereinafter provided." This clause informs the interpretation of the cancellation requirement paragraph, which is referenced in finding number twelve.

15. On May 17, 2002, Kemper issued bond number 3SM 622 693–00 on behalf of Roman Catholic Diocese of Gary (hereinafter, "Diocese,") on the Revised 2000 SI–2 Surety Bond form.

16. The form used for the Diocese bond and the Bethlehem bond are identical.

17. The Diocese bond contained the language, "This Bond shall be effective until *June 1, 2003*, or until canceled."

18. On April 14, 2003, the Worker's Compensation Board received a Cancellation Notice from Kemper for the Diocese bond.

19. The Cancellation Notice states that Kemper is notifying the Board of the cancellation of the Diocese bond effective June 21, 2003.

20. The Cancellation Notice further states, "This notice is given to you in accordance with the cancellation provision in said Bond."

21. Kemper's own action in the cancellation of the bond used on behalf of the Catholic Diocese of Gary suggest [sic] that Kemper has interpreted the language of the Revised 2000 SI–2 Surety Bond form to mean that the obligations of the surety under the bond are continuous until notice of cancellation is served upon the Board.

22. Kemper's obligation under the bond extends to all worker's compensation liabilities of Bethlehem with injury dates prior to, on and after September 1, 2001.

23. Pursuant to the language of the bond, Kemper is only liable to the extent of the penal sum of the bond, namely $3,000,000.

24. The Worker's Compensation Board is not a party to said action. As such, the interpretation of the bond cannot be construed against the drafter, which is not a party to the cause.

25. The bond was executed as security for worker's compensation liabilities of Bethlehem, which would include the compensation and benefits due to injured employees and dependents and medical providers as provided by the Worker's Compensation Act.

26. Bethlehem's self-insured status terminated for injuries occurring on or after April 30, 2003.

27. Kemper's motion to dismiss due to lack of subject matter jurisdiction is denied.

### ORDER

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Full Worker's Compensation Board of Indiana that Kemper is liable for all worker's compensation liabilities of Bethlehem that have and will arise from the period in which Bethlehem was self-insured, which is from August 1, 1979 to April 30, 2003, to the extent of the penal sum of the bond, which is $3,000,000.00.

It is further ordered that Kemper's motion to dismiss due to lack of subject matter jurisdiction is denied.

Appellant's App. at 2–5 (some alterations added).[4] Kemper now appeals.

### Discussion and Decision

■ Kemper contends that the Board erred in determining the extent of its liability under the Bond, arguing that its "liability is limited by the express terms of the Bond to claims relating to injuries that occurred during the effective period of the Bond, *i.e.*, September 1, 2000 to September 1, 2001." Appellant's Br. at 11. Our standard of review is well settled:[5]

---

**4.** Kemper does not challenge the Board's subject matter jurisdiction on appeal.

**5.** In reciting the applicable standard of review, Kemper quotes from an unpublished memorandum decision. Appellant's Br. at 12

On appeal, we review the decision of the Board, not to re-weigh the evidence or judge the credibility of witnesses, but only to determine whether substantial evidence, together with any reasonable inferences that flow from such evidence, support the Board's findings and conclusions. Where the question before this Court, however, is primarily a legal question, we do not grant the same degree of deference to the Board's decision, for law is the province of the judiciary and our constitutional system empowers the courts to draw legal conclusions.

*Walker v. State, Muscatatuck State Dev. Ctr.*, 694 N.E.2d 258, 266 (Ind.1998) (citation omitted).

■■■ At issue is the Board's determination of the extent of Kemper's liability under the Bond.[6] "A surety's liability is measured by the strict terms of his contract. Usually, a suretyship contract is construed in accordance with the rules governing other contracts." *Garco Indus. Equip. Co. v. Mallory,* 485 N.E.2d 652, 654 (Ind.Ct.App.1985) (citation omitted), *trans. denied* (1986).

Construction of the terms of a written contract is a pure question of law for the court; thus, our standard of review is de novo. In construing a contract we may not rewrite it to suit one party, but must apply the plain and obvious meaning of the language of the entire contract. If the terms of the contract are unclear, ambiguous, or capable of more than one interpretation, we will construe them to determine and give effect to the intent of the parties at the time they entered into the contract. We construe a contract against the drafter only if we cannot ascertain the parties' intent from all the ordinary interpretative guides.

*George S. May Int'l Co. v. King,* 629 N.E.2d 257, 260 (Ind.Ct.App.1994) (citations omitted), *trans. denied; see also Garco,* 485 N.E.2d at 654 ("[T]he contract of a surety for hire is viewed as analogous to an insurance contract, and is construed most strictly against the surety and in favor of the person to be protected. Therefore, any contractual ambiguities are resolved in favor of the beneficiary.") (footnote omitted). Kemper points out that the Board, not Kemper, drafted the contract in this case.

In ascertaining the contract's clarity, or lack thereof, we consider the whole document, not just the disputed language. Construction of contract language that would render any words, phrases, or terms ineffective or meaningless should be avoided. Courts should presume that all provisions included in a contract are there for a purpose and, if possible, reconcile seemingly conflicting provisions to give effect to all provisions. Furthermore, in its interpretation of the contract, the court should attempt to determine the parties'

---

*and* Appellant's Reply Br. at 1 (quoting *Little v. Little,* cited as 1997 WL 33644725, * 1, 1997 Ind.App. LEXIS 528, * 4 (Ind.App. 1997)). We remind counsel that "[u]nless later designated for publication, a not-for-publication memorandum decision shall not be regarded as precedent and shall not be cited to any court except by the parties to the case to establish *res judicata,* collateral estoppel, or law of the case." Ind. Appellate Rule 65(D).

6. Kemper states that it is making worker's compensation payments "for personal injury dates between September 1, 2000 and September 1, 2001[.]" Appellant's Br. at 11. Kemper further states that it is "also making payments for claims having personal injury dates prior to the effective period of the Bond or during the alleged one year renewal period, subject to a reservation of rights, but has denied claims for the period after September 1, 2002." *Id.*

intent when entering a contract from their expressions within the four corners of the written instrument.

*Ten Cate Enbi, Inc. v. Metz*, 802 N.E.2d 977, 981 (Ind.Ct.App.2004) (citations and quotation marks omitted). "[A] contract is not considered ambiguous merely because a controversy exists; rather, ambiguity will be found when a contract is susceptible to more than one interpretation as measured by the standard of whether reasonable minds could differ as to its meaning." *Crowe v. Boofter*, 790 N.E.2d 608, 611 (Ind.Ct.App.2003).

 "Generally, a surety's liability is no greater than the principal's." *Goeke v. Merch. Nat'l Bank & Trust Co. of Indpls.*, 467 N.E.2d 760, 768 (Ind.Ct.App.1984), *trans. denied* (1985). Under the Act, Bethlehem was obligated to pay its worker's compensation liabilities as they were incurred while its certificate of self-insurance remained in force. Ind.Code §§ 22–3–2–5, 22–3–5–1. With respect to bonds taken pursuant to statute, i.e., official bonds, we have stated that

> the terms of the statute requiring the bond enter into and become a part of it, whether written into the bond or not, and constitute the contract upon which both the rights and liabilities of the surety are to be determined. When parties enter into a bond of this kind, they are bound to know the conditions imposed by the law pertaining thereto.

*Gen'l Asbestos & Supply Co. v. Aetna Cas. & Sur. Co.*, 101 Ind.App. 207, 216–17, 198 N.E. 813, 817 (1935). Additionally, we note that

[a] surety has a right to stand upon the terms of the bond as written and, aside from the required statutory conditions which may be read into a bond, the court has no power to add other conditions to those fixed by statute. The rule that the obligation is to be construed against the surety is of construction only, and if there is no ambiguity, the intention of the parties cannot be disregarded or nullified by construction.

*Dow–Par, Inc. v. Lee Corp.*, 644 N.E.2d 150, 157 (Ind.Ct.App.1994), *trans. denied* (1995) (citations and quotation marks omitted).[7] Finally, we observe that the underlying purpose of the Act is to "provide injured workers with an expeditious and adequate remedy" and that we must "resolve doubts in the application of [its] terms in favor of the employee so as to effectuate the Act's humanitarian purpose[.]" *Walker*, 694 N.E.2d at 266.

The Bond reads in relevant part as follows:[8]

WORKERS COMPENSATION BOARD OF INDIANA

[Address]

FORM SI–2

(Revised 2000)

## SURETY BOND

Bond Number *3SM 961 084–00*

KNOW ALL MEN BE [sic] THESE PRESENTS THAT WE Bethlehem Steel Corp., an [sic] New Jersey Corporation with principal place of business in the City of Bethlehem, State of Pennsyl-

---

7. Kemper quotes this excerpt from *Dow–Par* in its original brief but nevertheless asserted at oral argument that the Bond was not taken pursuant to statute. We disagree. Indiana Code Section 22–3–5–1(b) provides that the Board may require a self-insured employer to deposit a bond to "secure the payment of [worker's compensation] liabilities as they are incurred." The nature and extent of those liabilities are defined by the Act.

8. Starting with the bond number, all underlined text was inserted into blank spaces within the original document.

vania, as Principal, and American Motorists Insurance Co., an Illinois corporation, authorized to do business in Indiana, as Surety, and held firmly bound unto the State of Indiana for the use and benefit of all employees of the Principal and person [sic] who may be entitled to medical treatment or compensation under the Worker's Compensation and Occupational Diseases Acts ("the Acts") of the State of Indiana, in the sum of Three Million and no/100 dollars ($3,000,000.00), lawful money of the United States, for the payment of which sum we bind ourselves, our successors and assigns, jointly and severally firmly by these presents.

WHEREAS, the principal has been granted the privilege of self-insuring its workers' compensation liabilities under the Acts, as amended,

WHEREAS, the principal, by virtue of said self-insurer status, has undertaken to pay employees all compensation, benefits and payments that are due, or which may become due, then under the terms of the Acts, as amended, on account of occupational disease, injury or death, with a personal injury date that occurs while it is self-insured.

NOW, THEREFORE, the condition of this obligation is such that if the principal, its heirs, executors, administrators (or its successors and assigns in case of a corporation), shall well and truly discharge and pay all compensation and all other benefits or payments for which it is liable, or may become liable under the said Act [sic] on account of injury, disease or death with a personal injury date that occurs during the effective period of this bond, then this obligation shall be void, otherwise it shall remain in full force and effect.

THE CONDITION OF THE FOREGOING OBLIGATION IS SUCH that the following conditions shall also apply to this surety bond:

1) The Surety does, by these presents, undertake and agree that the obligation of this bond shall cover and extend to all past, present, existing and potential liability of said Principal, as a self-insurer, to the extent of the penal sum herein named, without regard to specific injuries, date(s) of injuries, happenings or events.

2) This bond shall be continuous in form and shall remain in full force and effect unless terminated in the manner hereinafter provided.

3) In the event said Principal shall fail to pay any award or awards which shall be rendered against it by the Worker's Compensation Board of Indiana ("Board") with [sic] thirty (30) days after the same becomes, or became, final, the Surety shall forthwith pay, to the extent of its liability under this bond, said award or awards, to the entitled thereto upon the order of the Board.

4) If the said Principal shall suspend payment or shall become insolvent or a receiver shall be appointed for its business, the undersigned Surety will pay said award(s), to the extent of its liability, under this bond, before the expiration of thirty (30) days after the same becomes, or became, final, without regard to any proceedings for liquidation of said Principal.

5) The undersigned are held and firmly bound for the payment of all legal costs, including reasonable attorney fees incurred in all or any actions in proceedings taken to enforce payment of this bond, or payments of any award or judgment rendered against the undersigned Surety, on account of the execution by it of this bond.

PROVIDED, the Surety herein, by and in the execution of this bond, does here-

by recognize that said bond is a direct financial guarantee to and for the benefit of all unknown and unnamed employees of the Principal in connection with the Indiana Worker's Compensation and Occupational Disease Acts only.

IT IS FURTHER AGREED AND STIPULATED that this Bond may be cancelled at any time by the surety upon giving 60 days notice to the principal herein and to the Board, in which event the liabilities of the surety shall, at the expiration of said 60 days, cease and terminate, except as to such liabilities of the principal with a personal injury date of [sic] disablement that occurred during the effective period of the bond and prior to the expiration of said 60 days. This Bond shall be effective until September 1, 2001 or until canceled.

. . . .

PROVIDED FURTHER, this Bond shall be effective as of the 1st day of September 2000.

Signed, sealed, and delivered this 31st day of August 2000[.]

Appellant's App. at 121–22.

Kemper contends that its liability under the Bond is limited to "all compensation and all other benefits or payments for which [Bethlehem] is liable or may become liable under [the Act] on account of injury, disease or death with a personal injury date that occurs during the effective period of [the Bond]," which Kemper asserts was from September 1, 2000, until September 1, 2001. Appellant's App. at 121. We disagree. Kemper's argument places undue emphasis on this isolated language and disregards both relevant provisions of the Bond and relevant provisions of the Act that must be read into the Bond.

The Bond's second and third paragraphs (starting with "WHEREAS") merely acknowledge that *before* the effective period of the Bond, Bethlehem had satisfied its obligation as a self-insured employer under the Act: namely, to pay all worker's compensation liabilities that arise "on account of occupational disease, injury or death, with a personal injury date that occurs while it is self-insured." The subsequent paragraph (starting with "NOW, THEREFORE") is a source of contention between the parties, but we believe that when read in context with the rest of the Bond and with the Act, its meaning is clear and may be fairly summarized as follows: If Bethlehem continues to satisfy its obligation *during* the effective period of the Bond, then this obligation shall be discharged; otherwise, the obligation shall remain in full force and effect, to be paid by Kemper as the surety. Stated differently, Bethlehem's obligation as a self-insured employer under the Act (and therefore under the Bond) extends to worker's compensation liabilities arising from personal injury dates both before and during the effective period of the Bond; if Bethlehem does not satisfy this obligation, then Kemper must do so. *See, e.g.,* Ind. Admin. Code tit. 631, r. 1–1–27 ("If an injured employee, or his dependents have been awarded compensation by the [Board], either by approval of an agreement or by an award, the employer shall continue the payments of compensation under the terms of such award or agreement for the specific period therein fixed, or until such employee returns to work, or the dependency ends, or the employer shall have in good faith disagreed with the injured employee or the dependents as to the continuation of such compensation payments."); Ind.Code § 22–3–3–22 (establishing range of average weekly wages and maximum compensation, exclusive of medical benefits, for purposes of computing worker's compensation awards).

Our reading of this paragraph is buttressed by the first numbered paragraph, in which Kemper acknowledges that its

obligation "shall cover and extend to all past, present, existing and potential liability of [Bethlehem], as a self-insurer, to the extent of [$3,000,000], *without regard to specific injuries, date(s) of injuries, happenings or events.*" [9] Appellant's App. at 122 (emphasis added). Kemper's insistence that this provision applies only to injuries that occur during the effective period of the Bond disregards both the plain language of the provision and Bethlehem's statutory obligation to compensate its employees for injuries that occur while it is self-insured, whether before or during the effective period of the Bond.

In regard to which, we conclude that the Bond remained effective after September 1, 2001, because Kemper failed to cancel it before Bethlehem filed for bankruptcy, which triggered Kemper's obligation under the Bond. *See id.* ("If said Principal . . . shall become insolvent . . ., the undersigned Surety will pay said award(s), to the extent of its liability, under this bond, before the expiration of thirty (30) days after the same becomes, or became, final, without regard to any proceedings for liquidation of said Principal."). Even if Kemper were correct that the Bond would have expired by its own terms on August 31, 2001, the acceptance of an additional annual premium prior to that date extended the coverage provided by the Bond until at least August 31, 2002. As such, the Bond

was in full force and effect when Bethlehem filed for bankruptcy in October 2001, and Kemper must therefore pay Bethlehem's "past, present, existing and potential" worker's compensation liabilities for personal injury dates that occurred from August 1, 1979, to April 30, 2003, when Bethlehem ceased operations.[10]

It is important to remember that the underlying purpose of the Act, and by extension the underlying purpose of a surety bond taken pursuant to the Act, is to "provide injured workers with an expeditious and adequate remedy" and that we must "resolve doubts in the application of [its] terms in favor of the employee so as to effectuate the Act's humanitarian purpose[.]" *Walker*, 694 N.E.2d at 266. Indeed, by executing the Bond, Kemper recognized that it "is a direct financial guarantee to and for the benefit of all unknown and unnamed employees of [Bethlehem] in connection with" the Act. Appellant's App. at 122. It is also important to remember that a surety bond taken pursuant to the Act is unlike a traditional insurance policy, in which the insurer assumes a loss risk by agreeing to indemnify the insured for a casualty that occurs during the effective period of the policy. Instead, the surety assumes a credit risk by agreeing to indemnify the employer's "past, present, exist-

9. Given the wording of this provision, we are unpersuaded by Kemper's reliance on *United States v. Insurance Company of North America*, 83 F.3d 1507 (D.C.Cir.1996). The bond at issue in that case did not include the phrase, "without regard to specific injuries, date(s) or injuries, happenings or events," but instead was "limited to any and all present, past, and potential liability . . . which attaches to or is accrued by the Principal in or for the period during which this bond is in force." *Id.* at 1511 (emphasis omitted).

With respect to the additional premium, Kemper asserts that it "relates to the *remaining exposure Kemper had incurred* for injuries

occurring the one year that the [Bond] was in effect, *i.e.,* September 1, 2000 to September 1, 2001." Appellant's Br. at 22 (emphasis added). Kemper's characterization of the premium as relating to tail-end exposure is inconsistent with its primary argument that its obligation under the Bond terminated on September 1, 2001.

10. It is not necessary to address the Board's position that the only way Kemper could have terminated the Bond was by cancellation upon giving sixty days' notice pursuant to the Bond.

ing and potential" worker's compensation liabilities in the event that the employer becomes insolvent or suspends benefit payments during the effective period of the bond. If the employer pays all such benefits during the effective period of the bond, then the surety does not pay; if the employer goes bankrupt while the bond is in effect, then the surety must pay its worker's compensation liabilities to the extent of the bond. Because Bethlehem became insolvent while the Bond was in effect, Kemper is liable for its "past, present, existing and potential" worker's compensation liabilities for personal injury dates from August 1, 1979, to April 30, 2003, to the extent of $3,000,000. We therefore affirm the Board's order.

Affirmed.

VAIDIK, J., concurs.

BAKER, J., dissents with opinion.

BAKER, Judge, dissenting.

While the goal of ensuring that employees receive appropriate worker's compensation payments is a noble one, the worthy ends do not justify the costly means—particularly in this instance. I appreciate the Board's desire to find Kemper liable for the full face value of the Bond, but the Bond's clear and unambiguous language does not sanction such a result.[11] Therefore, I respectfully dissent from the majority opinion to the extent that it holds Kemper liable for payments to be made after September 2002, because its interpretation of the Bond will lead to an unreasonable level of liability for Kemper not contemplated by the contractual language.

The majority concludes that when Bethlehem filed for bankruptcy, it triggered Kemper's obligation under the Bond, pointing to the following clause: "If said Principal . . . shall become insolvent . . . , the undersigned Surety will pay said award(s), *to the extent of its liability, under this bond,* before the expiration of thirty (30) days after the same becomes, or became, final, without regard to any proceedings for liquidation of said Principal." Appellant's App. p. 122 (emphasis added). The majority then concludes, based upon this clause, that it is not necessary to address the meaning of the Bond's effective date clause because Bethlehem's insolvency triggered Kemper's liability for Bethlehem's "past, present, existing and potential" worker's compensation liabilities. Op. p. —— n. 10. I respectfully disagree, because the above clause only holds Kemper liable to the extent of its liability under the Bond, which necessarily entails an examination of the effective date clause, along with other relevant clauses.

Kemper contends that it is liable only for injuries that occurred between September 1, 2000, and September 1, 2001. The majority and the Board concluded that Kemper is—and continues to be—liable for all ongoing worker's compensation payments and for all injuries that occurred between August 1, 1979, and April 30, 2003. I believe that the correct result is somewhere between the two.

I believe that Kemper is responsible for "all past, present, existing and potential" worker's compensation liabilities for which Bethlehem failed to compensate its em-

---

11. The majority opinion includes some discussion of a revised bond form that Bethlehem could have submitted when it filed its annual self-insurance renewal application on July 31, 2002. Op. p. ——. There is no evidence in the record, however, that Kemper ever executed the revised bond form. Thus, while I conclude that Kemper is liable for all payments due up until September 1, 2002, I note that Kemper is bound only to the original bond form that it executed in 2000, and should be bound in no way to the revised bond form.

ployees, "without regard to specific injuries, dates of injuries, happenings, or events," so long as the payments were due during the Bond's effective period. *See* Appellant's App. p. 121–22. This interpretation leaves meaning in the effective date clause even as it acknowledges that Kemper is responsible for all liabilities without regard to the dates of the injuries.

In my view, the most reasonable interpretation of the effective date clause leads to the conclusion that the effective period of the Bond terminated on September 1, 2001, unless Kemper exercised its cancellation right before that date. But the evidence most favorable to the judgment also indicates that Kemper accepted an additional premium payment that covered the subsequent year—through September 1, 2002. I believe, therefore, that the Bond's stated effective date of September 1, 2001, was extended by one year as a result of Kemper's acceptance of that payment. This extension does not affect the outcome of this case, however, because there is no indication in the record that Bethlehem failed to pay any amounts due through September 1, 2002.

I am mindful of the clause providing that the Bond "shall be continuous in form and shall remain in full force and effect unless terminated in the manner hereinafter provided." Appellant's App. p. 121. Rather than requiring Kemper to cancel the contract to terminate it, however, the Bond provides two alternate methods of termination: "[t]his Bond shall be effective until September 1, 2001 *or* until cancelled." Appellant's App. p. 121–22 (emphasis added). Thus, the Bond remained in full force and effect unless terminated by date or by Kemper's cancellation.

Based on what I believe to be the most sensible interpretation of the Bond language, Kemper should be liable for all worker's compensation payments that

were due during the effective period of the Bond. Although the effective period of the Bond was extended to September 1, 2002, there is no evidence that Bethlehem failed to make any worker's compensation payments during that time period. Therefore, I would reverse the Board.